IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Timothy N. Moultrie, and the South Carolina Libertarian Party; ) ) ) | C/A NO. 3:06-CV-3073-CMC |
| Plaintiffs, ) ) | |
| v. ) ) ) | **OPINION and ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT** |
| South Carolina Election Commission, through its members in their official capacities, and the State Attorney General, Henry Dargan McMaster, in his official capacity only, ) ) ) ) ) ) | |
| Defendants. ) _____ ) | |

This matter is before the court on cross-motions for summary judgment. For the reasons set forth below, the court grants Defendants' motion (Dkt No. 8), in part, and denies Plaintiffs' counter-motion (Dkt No. 15).

Through this action, Plaintiffs challenge Defendants' alleged non-enforcement of certain provisions of state law regulating the organization and certification of political parties. *See* Complaint ¶¶ 2-7 (referring to provisions found in S.C. Code Ann. §§ 7-9-10 through 7-9-80). More specifically, Plaintiffs allege that "Defendants have systematically allowed the recognized political parties in the state to fail to fully comply with the state laws regulating the organization and certification of precinct meetings, county conventions and state conventions of registered political parties."[1] Complaint ¶ 1. Although the allegations suggest a broader set of deficiencies, the proffered

---

[1] The memorandum which Plaintiffs filed in support of their motion for summary judgment is captioned as a "Memorandum on Motion for Injunctive Relief." Dkt No. 15-2. This document is, as the caption suggests, identical to the memorandum filed in support of the motion for preliminary injunctive relief filed with the complaint. Dkt No. 3-2.

evidence at most supports the conclusion that Defendants failed to adequately enforce a requirement that the parties report the names of their officers.[2] *See infra* "FACTS."

The matter is, however, resolved on other grounds. First, the court concludes that Plaintiffs lack standing to pursue their alleged federal claims, primarily due to a lack of individualized injury. The court alternatively concludes that Plaintiffs' alleged federal claims are, as a matter of law, without merit even assuming Defendants failed to properly construe and adequately enforce state law. Finally, the court declines to exercise jurisdiction over any remaining state law claim for declaratory or injunctive relief. To the extent state law claims are pursued in this action, they are dismissed without prejudice.

## STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987).

---

[2] Plaintiffs maintain that Defendants were obligated by S.C. Code Ann. § 7-9-10 to decertify parties which failed to fully comply with the requirements of S.C. Code Ann. § 7-9-80, including the requirement to report names of party officers. Defendants, by contrast, argue that the decertification penalty provided by S.C. Code Ann. § 7-9-10 is available only for the deficiencies specifically enumerated in that section, which do not include a failure to file the names of party officers. For present purposes, Defendants do not appear to challenge Plaintiffs' factual assertions that: (1) Defendants were aware of one or more political parties' failure to fully comply with the name-reporting (or possibly other reporting) requirements; and (2) Defendants declined to pursue decertification as a penalty for the reporting deficiencies.

2

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). When the non-moving party has the ultimate burden of proof on an issue, the moving party must identify the parts of the record that demonstrate the non-moving party lacks sufficient evidence. The nonmoving, burden-bearing party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also generally Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.,* 53 F.3d 55, 62 (4th Cir. 1995).

**FACTS**

Plaintiffs proffer four affidavits and various documents in support of their claims. Taken in the light most favorable to Plaintiffs,[3] these documents support the inference that Defendants have long been aware that various political parties have failed to fully comply with the statutory requirement that they report the names of their party officers as set forth in S.C. Code Ann. § 7-9-80. *See, e.g.,* Dkt No. 1-2 (South Carolina Election Commission Memorandum to "Political Party Chair/Director" dated February 8, 2006 (stating "It has come to my attention that some county political parties may not be aware of the statutory requirement to report party officers to the clerk

---

[3] Because the court resolves the cross-motions in favor of Defendants, it presents the facts here in the light most favorable to Plaintiffs.

of court of the county and to the Secretary of State[,]" and quoting S.C. Code Ann. § 7-9-80's requirements for such reports)). While Plaintiffs' allegations suggest a broader set of deficiencies, the officer name reporting deficiencies are the only ones supported by a proffer of admissible evidence, that evidence consisting, primarily of the Commission's own memorandum suggesting knowledge of the alleged name-reporting deficiency.[4]

Plaintiffs' proffered evidence also supports the conclusion that the Commission sought to cure the reporting deficiencies only through educational efforts, including through reminders such as the memorandum cited above and discussion at meetings. *See* Dkt No. 1-2 (Commission

---

[4] Various documents attached to the complaint support the premise that Plaintiffs or others advised the Commission of their broader concerns and requested relief in the form of party decertification, at least at the county level. For example, in a letter dated July 11, 2006, Grover E. Lown ("Lown") demanded that the Commission "observe the Law and Decertify all *County* Political Parties" due to the absence of county level records of their "reorganization/convention filings." Dkt No. 1-5 (emphasis added). The Commission responded by letter dated August 17, 2006, stating that the Commission, in consultation with the Attorney General, "concluded the State Election [Commission] certifies/decertifies political parties at the state level. There is no provision in the law to allow for the decertification of a county political party. Furthermore, all certified political parties have indicated they have held county organizational meetings." Dkt No. 1-3. In a subsequent memorandum dated October 1, 2006, Moultrie advised the Federal Election Commission that "the most basic and routine steps required to retain ballot status within counties are being ignored by select political parties, specifically the filing of appropriate precinct meeting and county convention forms." Dkt No. 1-4.

While these documents suggest the absence of required (though unspecified) filings and other possible deficiencies, none provide specific evidentiary support for the alleged deficiencies. For example, in his affidavit, Lown states that he was "made aware" in 2004 and again in 2006, of the failure "of political parties to hold the required Reorganization meetings according to SC Statute Title 7." He does not, however, provide supporting evidence. Dkt No. 1-6 (Lown affidavit ¶ 1). Likewise, Lown states that he was informed in a telephone conversation with Commission employees that the political parties were "self policing, and the Commission had no authority to enforce the state election laws pertaining to the conduct of party business. He does not, however, specifically identify the alleged deficiencies at issue or provide direct support for the same. *Id.* ¶ 4 (internal citation marks omitted). *See also id.* ¶¶ 6-7 (stating that Lown made Freedom of Information Act ("FOIA") requests to all 46 County Clerks of Court seeking information regarding "county filings . . . for Precinct Club Meetings and County Conventions," and received responses from only 33 of the counties, but not providing the content of any responses).

4

memorandum to political party chairs); Dkt No. 15-2 at 5 (Affidavit of Stewart F. Flood dated November 28, 2006 (addressing meeting held by Election Commission)).[5] This is despite at least one request that the Commission enforce the officer-reporting requirements through decertification of the non-complying parties (at least at the county level). *See* Dkt No. 1-6 (Affidavit of Grover E. Lown dated October 20, 2006 addressing Election Commission's rejection of his demand for enforcement of election laws through decertification of the non-complying parties); Dkt No. 1-5 & 1-3 (Lown demand letter and Election Commission response, discussed *supra* n. 4).

Two of Plaintiffs' proffered affidavits also support the conclusion that Plaintiff Timothy N. Moultrie ("Moultrie"), a Libertarian Party candidate for State Superintendent of Education, and John M. Cobin ("Cobin"), a candidate for the U.S. House of Representatives,[6] were denied participation in a live debate aired on South Carolina Educational Television ("SCETV"). This denial was, according to affidavits of Moultrie and Cobin, based on SCETV's "arbitrary executive decision to include only the major party candidates in the live televised debates." Dkt No. 15-2 at 4 (Affidavit

---

[5] In his affidavit, Flood states that he attended a February 2006 meeting held by the Commission for the purpose of addressing "the steps that political parties must take to meet the legal requirements specified by state law." Dkt No. 15-2 at 5. Flood and another attendee "asked questions regarding actions either already taken or that . . . had been announced would be taken by the Republican Party that were in direct violation of the law as just explained to us during the meeting. This included failure to hold required reorganizations, failure to file required forms, and failure to hold proper conventions[.]" Flood affid. ¶ 7. Flood states that, after receiving repeated non-committal answers, he was told by a Commission representative: "We don't enforce the law. If you want something done, you'll have to sue the Republican Party." While this affidavit suggests Flood had information regarding possible violations of the law, he does not proffer any admissible evidence of such violations.

[6] Cobin's party affiliation is not disclosed. For present purposes, the court presumes that he was a Libertarian Party candidate. Such an assumption favors Plaintiffs as, without it, no injury to Cobin would constitute an injury to either Plaintiff.

5

of Timothy N. Moultrie dated November 29, 2006 at ¶ 7); Dkt No. 15-2 at 6 (Affidavit of John M. Cobin dated November 22, 2006 at ¶ 7).

**Complaint.** Plaintiffs assert that Defendants' failure to require full compliance with the state election laws violates the Voting Rights Act of 1965 and,

> as such, violates the constitutional rights of each plaintiff under the Due Process Clause of the 14th Amendment to the U.S. Constitution and Article V of the State Constitution, and also violates the Equal Protection Clause of the 14th Amendment to the U.S. Constitution and Article V of the State Constitution in that such failure denies citizens within the jurisdiction of this court of the equal protection of the laws.

Complaint ¶ 9. *See also* Complaint at 1 (jurisdictional provisions stating: "This action arises under the Constitution of the United States, the 14th Amendment to the Constitution, and the Voting Rights Act of 1965."); Complaint at ¶10 (alleging that Defendants' failure to enforce the election laws "create[s] suspect classifications that significantly burden the exercise of fundamental rights guaranteed to the Plaintiffs and other citizens of the State of South Carolina.").

Plaintiffs do not, however, identify any specific provisions of the Voting Rights Act which they maintain have been violated (and none is obviously applicable). Neither do they suggest that any one group or individual has been treated differently than any other individual or group as to the enforcement of the law, such as might support an equal protection claim. Finally, they do not allege that Defendants have sought to enforce the relevant statutory requirements against either Plaintiff, only that Defendants have failed to enforce the statutory requirements against others.

In their Prayer for Relief, Plaintiffs rely specifically on: S.C. Code Section 15-3-10 (South Carolina Uniform Declaratory Judgments Act); 28 [sic] U.S.C. § 1983 (which the court presumes

is intended to refer to 42 U.S.C. § 1983); and 28 [sic] U.S.C. § 1988 (which the court presumes is intended to refer to 42 U.S.C. § 1988).[7]

Based on these asserted state and federal violations, Plaintiffs ask this court to declare that S.C. Code Ann. § 7-9-10 requires Defendants to decertify any party which fails to comply with the requirements to file the names of party officers as set forth in S.C. Code Ann. § 7-9-80 and to issue a mandatory injunction giving effect to that declaration. Complaint ¶ 14 (seeking declaratory relief pursuant to S.C. Code Ann. § 15-3-10) & ¶ 15 (seeking declaratory and injunctive relief under 28 [sic] U.S.C. § 1983). The same declaratory and injunctive relief was sought in Plaintiffs' initial motion for preliminary injunctive relief and is sought through Plaintiffs' motion for summary judgment. *See* Dkt No. 3 & 15 (as noted above, the memoranda in support of the two motions are also essentially identical).

In their response to summary judgment, however, Plaintiffs appear to retreat from this requested relief, at least acknowledging that the relief they seek may require legislative action. For example, Plaintiffs state that Defendants "refuse[] to acknowledge the obvious and simple relief which would be to *reexamine the Election laws* and develop[] a simple test for decertification of organized political parties that have failed to fully comply with the certification laws", Dkt No. 16 at 1 (emphasis added). They also state that certain of Defendants' arguments "reinforc[e] Plaintiffs' argument that *the General Assembly must have created a neutered enforcement provision*" and that

---

[7] Title 28 has neither a Section 1983 nor a Section 1988. Title 42, on the other hand, has both, and both appear to apply to Plaintiff's constitutional claims: 42 U.S.C. § 1983 providing a private cause of action for violation of a federal constitutional and statutory rights; and 42 U.S.C. § 1988(b) providing for attorney's fees in favor of the successful party in, *inter alia*, actions pursued under Section 1983.

7

the requested relief "is simple: *come up with a process to enforce* the decertification mechanism of Section 7-9-10." *Id*. at 4 (emphasis added).

**DISCUSSION**

**I.     Standing**

**Defendants' Arguments.**  Defendants assert that Plaintiffs lack standing because they have not suffered any cognizable injury which might be remedied by the relief sought. In this regard, it is critical that Plaintiffs do not allege that they were or fear they will be treated differently from some other party or candidate with respect to enforcement of the law. They do not, in fact, suggest that they might at any point be injured by *enforcement* of the law. Instead, the injury alleged flows only from Defendants' alleged uniform *non*-enforcement of the law.

**Plaintiffs' Arguments.**  In their memorandum in opposition to summary judgment, Plaintiffs assert that paragraph six of their complaint establishes a "'direct injury' suffered by all minority political parties, including the two Plaintiffs in this case.'" Dkt No. 16 at 2. That paragraph refers to Plaintiffs' requests for information from the various counties and the responses received.[8] Collectively, the various subparts of paragraph six allege that Plaintiffs fully complied with the reporting requirements in all counties while the two major parties did not. Complaint ¶ 6. No more specific injury is suggested.

Plaintiffs also rely on paragraphs ten through thirteen of the complaint as establishing injury. Dkt No. 16 at 2. These paragraphs, however, do not contain any more specific or different allegations of injury. *See* Complaint ¶ 10 (alleging Defendants' "failure to enforce the duly enacted election

---

[8] As noted above, no direct evidence of the requested responses is provided. Nonetheless, the court assumes for purposes of addressing standing that the responses revealed deficiencies of some form in the various parties' compliance with state law.

8

laws . . . create suspect classifications that significantly burden the exercise of fundamental rights"); Complaint ¶ 11 (asserting that Plaintiffs lack an adequate remedy at law); Complaint ¶ 12 (alleging that "each defendant has violated [unspecified] fundamental rights of the Plaintiffs" though non-enforcement of "mandatory election laws"); and Complaint ¶ 13 (alleging that the Commission "is mandated to decertify organized parties for failure to fully comply with [specified requirements in] Sections 7-9-10 [though -100]").

Taken together with the affidavits submitted by Plaintiffs, these allegations suggest, at most, the following injuries: (1) injury to their interest as citizens in enforcement of the law; (2) injury to their interests as, respectively, a candidate and a political party in being forced to run against candidates and parties which should have been decertified (but based on requirements which were uniformly enforced (or, in this case, uniformly not enforced)); and (3) their resulting exclusion from debates based on the decision of an unrelated entity (SCETV) which may have differed had the major parties been decertified.

**Requirements for Standing.** The requirements of standing were summarized in *Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992), as follows:

> the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) "actual or imminent, not 'conjectural' or 'hypothetical[.]'" . . . Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent actions of some third party not before the court." . . . Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan,* 504 U.S. at 560-61 (internal citations omitted). As also noted in *Lujan*, Plaintiffs bear the burden of establishing each of these elements. *Id.* at 561.

9

The *Lujan* court also explained:

> When the suit is one challenging the legality of government action or inaction, the **nature and extent of facts that must be averred** (at the summary judgment stage) or proved (at the trial stage) in order to establish standing **depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue**. . . . When . . . a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else,* much more is needed.  In that circumstance, causation and redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction – and perhaps on the response of others as well.

*Id*. at 561-62 (italics in original, bold added–also noting that "when the plaintiff is not himself the object of the government action or inaction . . . standing is not precluded but is ordinarily 'substantially more difficult to establish'").

**Standing Requirements Applied.**  The primary injury alleged in this case is that which flows directly from the state's alleged non-enforcement of state law against political parties other than the political-party Plaintiff.  This injury consists of the allegedly improper inclusion of non-complying political parties on the ballot.

The resulting injury is, therefore, primarily one which would be shared equally by every citizen of the state as all citizens have an equal interest in the full enforcement of statues governing the political process.  Viewed from this perspective, the injury is not concrete and particularized to Plaintiffs.  *See, e.g., Lujan,* 504 U.S. at 563-64 (finding no injury in fact from failure of environmental regulation to require "consultation with respect to certain funded activities abroad" because Plaintiffs failed to show that one or more of their members would be directly affected apart from the members' special interest in the subject).  *See also Daimler Chrysler Corp. v. Cuno,* 126 S.Ct. 1854 (2006) (relying on *Lujan* to find an absence of standing where taxpayers challenged

franchise tax credit which they alleged diminished funds available for other uses and imposed a disproportionate burden on them as state and municipal taxpayers).[9]

This result is also supported by case law addressing standing to contest criminal prosecutions. As to such prosecutions, the Supreme Court has "consistently h[e]ld that a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution" and that "a private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another." *Linda R.S. v. Richard D*., 410 U.S. 614, 619 (1973).[10] Here, the challenged decision relates to enforcement of a penalty provision, rather than a decision not to pursue a criminal prosecution. Plaintiffs have not, however, directed the court to any authority which would suggest that non-enforcement of a penalty provision of state law should, for purposes of standing, be treated differently from non-enforcement of available criminal penalties.

Plaintiffs have, likewise, failed to direct the court to any authority for the premise that political candidates and parties have any greater legal interest in enforcement of laws regulating the political process than do citizens in general. Thus, Plaintiffs' interests as a candidate and a political

---

[9] The underlying statute at issue here does not provide for a cause of action in favor of any person or party, much less persons or parties such as Plaintiffs. Thus, it is distinguishable from the statute at issue in *Federal Election Commission v. Akins*, 524 U.S. 11 (1998), in which the Court found voters had standing to challenge a Federal Election Commission decision because "Congress. . . specifically provided in [the relevant statute] that '[a]ny person who believes a violation of this Act . . . has occurred, may file a complaint with the Commission.'" *Id.*, 524 U.S. at 19.

[10] The statute at issue in *Linda R.S.,* provided criminal sanctions for parents' non-support of their legitimate children. Plaintiff, the mother of an illegitimate child, sought declaratory and injunctive relief requiring that the statute be enforced against her child's father. The court found no standing because the statute provided only a specific criminal penalty which could not be avoided by payment of the past-due support. *See id.*, 410 U.S. at 618 (distinguishing statutes based on contempt model which allowed the non-supporting parent to avoid jail by paying the amounts due and finding the possible benefit flowing from the deterrent effect of future prosecution through the statute at issue to be speculative).

11

party do not support a finding that they have suffered a concrete and particularized injury sufficient to support standing.

Plaintiffs' averments that Moultrie and another Libertarian Party candidate were excluded from certain televised debates also fail to support standing. This is first because of the lack of a direct connection between SCETV's decision to exclude third-party candidates from these debates and any action by the Defendants presently before the court. There is, moreover, no showing that the relief sought in this action would remedy the past exclusion or prevent future exclusion from televised debates. At most, it is speculative both that the requested form of enforcement would lead to decertification of some other party in a future election cycle (thus benefitting Plaintiffs by having one less party to run against and one less candidate available for debate) and that the reduction in the number of parties fielding candidates would lead to a different decision by SCETV (a non-party) as to debate participation.

Standing is also absent to the extent legislative action is necessary to clarify (or create) meaningful remedies for non-compliance with the law. This is because the "relief" sought is not within the power of this court to grant. As noted above, Plaintiffs appear to have conceded that the law is unclear and legislative action is (or at least may be) necessary for its clarification.

For the reasons set forth above, the court concludes that Plaintiffs have failed to establish standing under standards applicable in this court.

**II.     Absence of Cognizable Federal Claim**

It is also clear that Plaintiffs cannot succeed on the merits of their federal claims. Plaintiffs cannot, for example, proceed on a substantive due process theory because they do not have a protected property interest in enforcement of the relevant penalty against a third party. *See generally*

*Town of Castle Rock, Colorado v. Gonzales,* 545 U.S. 748 (2005) (finding litigant lacked a protected property interest in enforcement of restraining order against a third party, thereby precluding substantive due process claim based on town's failure to enforce order); *Snowden v. Hughes*, 321 U.S. 1, 7 (1944) (reaffirming for third time, conclusion "that an unlawful denial by state action of a right to political office is not a denial of a right of property or of liberty secured by the due process clause"). Likewise, Plaintiffs cannot proceed on an equal protection theory because they have neither alleged nor proffered evidence of any disparate treatment of different classes. *See Snowden*, 321 U.S. at 8 (rejecting an equal protection claim based on state officials' alleged improper interpretation of state election laws where there was "no allegation [of] . . . any intentional or purposeful discrimination between persons or classes").

No other federal theory is suggested by the Complaint, except to the extent the vague reference to the Voting Rights Act may suggest a theory. No specific claim under the Voting Rights Act is, however, cited by Plaintiffs in any filed document and no claim under that Act is apparent to the court. Neither is the Voting Rights Act mentioned in Plaintiffs' response to Defendants' motion for summary judgment which relies solely on a claim of violation of Plaintiffs rights to equal protection. *See* Dkt No. 16 at 4 (suggesting equal protection rights were violated by non-enforcement, as opposed to differential enforcement).

What is alleged, at most, constitutes a violation of state law (through non-enforcement), not a violation of federal law. *See generally Snowden*, 321 U.S. at 7-8 (finding state officials' mere failure to enforce state law does not give rise to a constitutional injury); *Ferency v. Austin*, 666 F.2d 1023 (6th Cir. 1981) (finding state officials' failure to enforce *state* statute regarding the selection of delegates to political party's convention did not demonstrate a violation of federal constitutional

13

rights). Something more, generally of a discriminatory nature, is required to support a federal claim. *See Hennings v. Grafton,* 523 F.2d 861, 864 (7th Cir. 1975) (stating "[i]t is not every election irregularity . . . which will give rise to a constitutional claim and an action under [S]ection 1983" and noting that "violation of a state statute by an election official . . . will not" give rise to a federal law violation unless there is "conduct which is discriminatory by reason of its effect or inherent nature").

For these reasons, the court concludes that Plaintiffs cannot, as a matter of law, succeed on any federal claim pled in the complaint. Defendants are, therefore, entitled to summary judgment on the federal claims to the extent Plaintiffs may have standing to pursue them.

## III. Abstention

For reasons discussed above, the court concludes that Plaintiffs lack standing and, alternatively, lack a viable federal claim. Consequently, any continuing jurisdiction over any state law claim[11] would be based solely on the court's supplemental jurisdiction. Under 28 U.S.C. § 1367, the court may decline to exercise jurisdiction over state law claims if the court "has dismissed all claims over which it has original jurisdiction" or where there are "other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367 (c) (3) & (4).

Numerous factors support dismissal under both subsections of 28 U.S.C. § 1367(c). First, Plaintiffs have relied solely on the federal equal protection claim in opposing summary judgment,

---

[11] Plaintiffs allege that Defendants' actions violate their due process and equal protection rights under both the federal and state constitutions. Complaint ¶ 9. They also rely on the South Carolina Uniform Declaratory Judgment Act, S.C. Code Ann. § 15-3-10, *et seq.,* in their prayer for relief. Complaint ¶ 14. The court does not reach the questions whether the state provides any remedy (similar to 42 U.S.C. § 1983) for violation of a state constitutional provision or whether, and under what circumstances, the state's declaratory judgment act may be available in federal court.

failing to suggest reliance on any state law claim.[12]  Thus, Plaintiffs appear to have abandoned pursuit of any state law claims which might be suggested by the complaint.  Second, the court has found Plaintiffs lack standing to pursue their federal claims and also lack a viable federal claim. Finally, any state law issues are of a type best suited to resolution by the state courts, assuming they present cognizable claims.  *See generally Johnson v. Collins Entertainment Co.,* 199 F.3d 710 (4th Cir. 1999) (holding that court should abstain even when federal claims raise issues of complex state regulation).[13]  If dismissal (or abstention under *Johnson*) were not available, the court would, for the same reasons, consider certification of the question to the state's highest court to be the most advisable course.

Plaintiffs' argument against abstention, that there is no evidence "that these agencies would change their position if a case were filed in state court," is nonsensical.  The question is not whether Defendants would change their position if faced with a state court action.  It is whether the state

---

[12] The memorandum which Plaintiffs filed in support of their own motion for summary judgment makes no mention of *any* causes of action, much less any state law causes of action. As noted above, this very brief submission merely repeats the document filed in support of the motion for preliminary injunctive relief, attaching some additional evidentiary support but providing no discussion of substantive law.

[13] Defendants argue that state law does not require (or allow) decertification based on a party's failure to comply with the requirement of Section 7-9-80 that officer names be filed.  This argument rests on the absence of specific reference to such a requirement in S.C. Code Section 7-9-10, which mentions Section 7-9-80 only in providing for decertification in the event the party fails to "hold county conventions as provided by §§ 7-9-70 and 80[.]"  Thus, Defendants argue that they did not err in declining to decertify parties on a basis which was not expressly mentioned as a grounds for decertification in an otherwise enumerated list.  While the court declines to resolve this question of state law, it notes that Defendants' interpretation is, at the least, not a frivolous interpretation of Section 7-9-10. Moreover, Plaintiffs' response to Defendants' motion for summary judgment suggests agreement that the statute is, at best, ambiguous.

15

courts provide the better forum for interpreting the state's election laws. This court concludes that they do under the circumstances of this case.[14]

## CONCLUSION

For the reasons set forth above, the court concludes that Plaintiffs have not proffered evidence sufficient to establish standing. Neither do their averments support the existence of a federal claim. For these reasons, the court concludes that the action should be dismissed for lack of standing and, alternatively, that Defendants are entitled to judgment as a matter of law on the federal claims. The court reaches this decision without interpretation of the underlying state law.

The court dismisses, without prejudice, any state law claim which may be raised in this action. This decision is, therefore, without prejudice to Plaintiffs' rights to seek relief in a state forum should they be able to establish standing under the rules applicable to that forum.

**IT IS SO ORDERED.**

                                     s/ Cameron McGowan Currie
                                     CAMERON MCGOWAN CURRIE
                                     UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
February 6, 2007

C:\temp\notesFFF692\06-3073orderoncrossmotionsforsummaryjudgment.wpd

---

[14] Plaintiffs' apparent concession that the law is unclear and that legislative action may be (or is) necessary to provide an effective enforcement mechanism also supports the conclusion that abstention is the most appropriate course. This is because it reflects a recognition that the underlying concerns may result from the state's policy choices as to appropriate enforcement mechanisms.